UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONDO TYUS, DAVID GEBHARDT,
and TIMOTHY PLETSCHER, individually
and as representatives of the Classes,

Plaintiffs,

v.  Case No. 15-CV-1467

UNITED STATES POSTAL SERVICE,

Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

On October 28, 2015, plaintiff Rondo Tyus filed a complaint in Wisconsin state court alleging that defendant United States Postal Service ("USPS") violated several provisions of the Fair Credit Reporting Act ("FCRA"). (ECF No. 1.) After USPS removed the case to federal court on December 9, 2015, all parties consented to proceed before a magistrate judge. (ECF Nos. 2 and 4.) On February 15, 2016, an amended complaint was filed, adding plaintiffs David Gebhardt and Timothy Pletscher as parties. (ECF No. 12.) The new plaintiffs also consented to proceed before a magistrate judge. (ECF No. 13.)

On April 1, 2016, the parties filed a joint motion to stay the case pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015). After the Supreme Court issued its decision, *Spokeo v.*

*Robins*, 136 S. Ct. 1540 (2016), USPS filed a motion to dismiss on June 13, 2016. (ECF No. 21.) The motion is fully briefed and ready for resolution.

**The FCRA**

In 1970 Congress enacted the FCRA upon the recognition of the increasingly important role played by consumer reporting agencies in the economy. Congress found "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). The stated purpose of the FCRA was to "require that consumer reporting agencies adopt reasonable procedures" to ensure "the confidentiality, accuracy, relevancy, and proper utilization of consumer reports." 15 U.S.C. § 1681(b).

In furtherance of these goals, Congress enacted a variety of mandates regarding the creation and use of consumer reports. Of particular importance to Congress were those consumer reports used for employment purposes. *See* 15 U.S.C. § 1681b(b). At issue here are two FCRA provisions that impose procedures to be followed by any person who procures a consumer report for employment purposes. The first, referred to by the parties as the "stand-alone disclosure" provision, provides:

> **(2) Disclosure to consumer**. (A) In general. Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
> (i) A clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes;

15 U.S.C. § 1681b(b)(2)(A)(i). The second provision, the "pre-adverse action notice requirements," provides:

> **(3) Conditions on use for adverse actions.** (A) In general. Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
> (i)     a copy of the report; and
> (ii)    a description in writing of the right of the consumer under this title as prescribed by the Federal Trade Commission under section 609(c)(3).

15 U.S.C. § 1681b(b).

### Amended Complaint

Plaintiffs' amended complaint contains two counts of alleged FCRA violations. Count I is asserted on behalf of all three plaintiffs and concerns the "stand alone disclosure" provision of the FCRA. 15 U.S.C. § 1681b(b)(2)(A)(i). Count II is asserted only on behalf of Tyus and concerns the "pre-adverse action notice requirements" of the FCRA. 15 U.S.C. § 1681b(b)(3).

### Tyus

According to the amended complaint, Tyus was an employee of the security firm ABM in September 2014. (ECF No. 12, ¶¶ 24-25.) USPS contracted with ABM to provide security guard services, and Tyus applied for a security clearance to work as a security guard at USPS. (*Id*.) USPS contracted with General Information Services, Inc. ("GIS") to perform criminal background checks on "job seekers." (ECF No. 12, ¶ 27.) In October 2014 USPS procured a criminal background report from GIS regarding Tyus. (ECF No.

12, ¶ 30.) Before procuring Tyus's GIS report, USPS had Tyus execute Form 2181-C, titled, "Authorization and Release—Background Investigation." (ECF No. 12, ¶ 33, Ex. A.)

Tyus's first claim contends that Form 2181-C is not a stand-alone disclosure as required by the FCRA because it contains extraneous information, including: a) a liability release clause; b) a "Privacy Act Statement" that sets forth all of the entities to whom and for which purposes the personal identifying information in the form may be disclosed; and c) a provision acknowledging that USPS would take measures to protect Tyus's information against unauthorized disclosures. (ECF No. 12, ¶¶ 35-37.) The amended complaint does *not* allege that 2181-C's extraneous provisions undermined Tyus's consent or authorization for GIS to release his criminal background report to USPS. Nor does the amended complaint allege that the presence of the additional information confused Tyus or adversely affected his understanding of the authorization and release.

On October 27, 2014, Tyus received a copy of his criminal background report in a letter from USPS stating, if "you believe the report to be inaccurate or incomplete, please fax the completed disclosure/ dispute from [sic] to GIS within five (5) business days from the date of this letter." (ECF No. 12, ¶ 38.)[1] Only three days later, in a letter dated October 30, 2014, USPS informed Tyus that his request for a security clearance

---

[1] Neither party provided the court with a copy of USPS's October 27, 2014 letter to Tyus.

had been denied based on the criminal background report, resulting in Tyus not being eligible for the job as a security guard at USPS. (ECF No. 12, ¶ 39.)

Tyus's second claim asserts that, by failing to provide him with the promised five days to dispute his criminal background report, USPS failed to give him "a reasonable and real opportunity to dispute the results of the report, and therefore violated the FCRA's pre-adverse action notice requirements[ ]" under 15 U.S.C. § 1681b(b)(3). (ECF No. 12, ¶ 43.) Tyus further alleges that, "[a]s a result of USPS's violations of the FCRA, [he] has suffered emotional distress, financial loss, and has been deprived of information to which he is entitled under the FCRA." (ECF No. 12, ¶ 44.)

**Gebhardt and Pletscher**

In or around August 2014, Pletscher applied for employment with USPS. (ECF No. 12, ¶ 57.) In August and September 2015, Gebhardt applied for employment at USPS. (ECF No. 12, ¶ 46.) USPS procured criminal background reports on both of them from GIS. (ECF No. 12, ¶¶ 47, 58.) Before doing so, USPS had each of them execute Form 2181-A, titled, "Pre-Employment Screening—Authorization and Release." (ECF No. 12, ¶¶ 50, 61; Ex. B.) Pletscher and Gebhardt assert that Form 2181-A is deficient for the same reasons alleged by Tyus as to Form 2181-C. (ECF No. 12, ¶¶ 51-54 and 62.)

Gebhardt and Pletscher allege that USPS violated the FCRA's "stand-alone disclosure" provision with regard to their applications for employment. (ECF No. 12, ¶¶ 46, 57.) As for the harm inflicted by this alleged statutory violation, Gebhardt and

Pletscher state that they "ha[ve] been deprived of information to which [they are] entitled under the FCRA." (ECF No. 12, ¶¶ 55, 63.) The amended complaint does not identify what information they were deprived of. Nor does it allege that Form 2181-A's extraneous provisions undermined Gebhardt's or Pletscher's consent for USPS to obtain their criminal background reports or negatively impacted their understanding of the authorization and release that they signed.

## Analysis

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2006)) (internal quotations omitted). On a motion to dismiss, "the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

Article III of the Constitution limits the federal judicial power to only certain cases and controversies. U.S. Const. art. III, § 2; *Spokeo*, 136 S. Ct. at 1547. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l U.S.A.*, 133 S. Ct. 1138, 1146 (2013) (*quoting Raines v. Byrd*, 521 U.S. 811, 818 (1997)) (internal quotations omitted). The "irreducible

6
Case 2:15-cv-01467-WED   Filed 10/19/16   Page 6 of 18   Document 33

constitutional minimum" of standing requires the plaintiff to have suffered an (1) injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547 (internal citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (*citing Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (internal quotations omitted).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized… ." *Spokeo*, 136 S. Ct. at 1548 (citation omitted). An injury must be both "concrete" *and* "particularized" to pass Article III scrutiny. *Id*. ("particularization is necessary to establish injury in fact, but it is not sufficient"). "Concrete" injuries must be "*de facto*"; that is, they must actually exist. *Id*. However, injuries need not be tangible to be concrete; intangible injuries can be concrete. *Id*. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise of religion)).

"In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 136 S. Ct. at 1549. Historical practice guides the inquiry by asking "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. In addition, "Congress is well

7

positioned to identify intangible harms that meet minimum Article III requirements" and it "may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id*. (citing *Lujan*, 504 U.S. at 578).

Moreover,

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.

*Spokeo*, 136 S. Ct. at 1549 (emphasis in original). However, not all statutory violations will confer standing on plaintiffs whose rights were violated:

> Congress' role in identifying and elevating intangible harm does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id*.

### **Plaintiffs' Standing on Count I: Stand-Alone Disclosure Requirement**

Tyus's original complaint alleged that USPS's conduct "caused concrete injury to Plaintiff and the putative classes by depriving them of information to which they had a statutory entitlement." (ECF No. 1-1, ¶ 53.) When the complaint was amended, that allegation was deleted. (ECF No. 12.) Consistent with that deletion, on April 1, 2016, the parties filed a joint motion to stay this action pending the Supreme Court's decision in *Spokeo*. In that motion they stated:

> The harm alleged by Plaintiffs consists largely of the invasion of what they claim are statutory rights conferred on them by the FCRA. As a result, this action implicates the legal question currently pending before the United States Supreme Court in *Spokeo:* whether Plaintiffs and the members of the classes they seek to represent have standing to have their claims heard in federal court under Article III of the Constitution *when the action is based on a bare violation of a federal statute.*

(ECF No. 18, ¶ 3.) (Emphasis added.)

In *Spokeo* the Supreme Court answered that question in the negative:

> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, *Robins cannot satisfy the demands of Article III by alleging a bare procedural violation.* A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

136 S. Ct. at 1550 (emphasis added).

Relying on *Spokeo*, USPS argues that none of the plaintiffs have sufficiently alleged in Count I that they suffered a concrete injury. Rather, plaintiffs' claim that USPS violated the FCRA's stand-alone disclosure requirement, without more, alleges nothing more than a bare violation of the FCRA. Therefore, plaintiffs lack standing to bring this suit, which must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Having not gotten the result they had hoped for in *Spokeo (*that a bare violation of the FCRA would suffice to give them standing), plaintiffs now argue that their

9

amended complaint alleges *more* than a bare procedural violation of the FCRA. They contend that, by failing to provide them with the required stand-alone disclosure document, USPS invaded their privacy and deprived them of information to which they were entitled. These harms, plaintiffs contend, are concrete and give them standing to sue under the FCRA.

The amended complaint does not allege that the plaintiffs did not understand the disclosure forms they signed because the forms were not limited to the information required by the stand-alone disclosure requirement. Nor does the amended complaint allege that the plaintiffs were confused or misled as to the nature or purpose of the forms by virtue of the additional information contained therein. Nor does the amended complaint allege that the information required by 15 U.S.C. § 1681b(b)(2)(A)(i) was missing from the forms that they signed, which would nullify plaintiffs' authorization by removing the informed nature of their consent.

Absent any of these allegations, it is difficult to understand plaintiffs' contention that, "[b]y procuring Plaintiffs' report[s] without first providing a proper disclosure, Defendant invaded Plaintiffs' privacy." (ECF No. 25 at 13.) Without an allegation that the criminal background reports were obtained without their written authorization, or that the extraneous provisions in the forms they signed undermined their consent, there can be no privacy injury. *Compare with Meza v. Verizon Comm., Inc.*, 16-cv-739, 2016 WL 4721475, at *3 (E.D. Cal. Sept. 9, 2016) ("Procuring a consumer report without first

making the required disclosure and without first obtaining written authorization violates the mandated procedures of §1681b(b)(2)(A)… This shows an invasion of the privacy interest created by § 1681b(b)(2)(A).") Here, the plaintiffs understood that, by signing the forms provided to them, they were authorizing USPS to obtain their criminal background reports. Or at least the amended complaint contains no allegation to the contrary.

The plaintiffs' alternative alleged injury is what they refer to as an "informational injury": namely, that the stand-alone disclosure provision of the FCRA requires that information be disclosed to them in a particular way and they did not receive it that way. That is, they contend, in and of itself a concrete injury conferring upon them standing to sue under the FCRA.

In support of their position, the plaintiffs cite *Church v. Accretive Health, Inc.*, which applied *Spokeo* to a claim regarding a provision of the Fair Debt Collection Practices Act (FDCPA) that requires debt collectors to include certain disclosures in an initial communication with a debtor. No. 15-15708, 2016 WL 3611543, at *3 (11th Cir., July 6, 2016) *(citing* 15 U.S.C. §§ 1692e(11); 1692g(a)(1)-(5)). Because the defendant sent a letter to the plaintiff that did not contain all of the FDCPA's required disclosures, the court in *Church* concluded that the plaintiff had alleged a concrete injury. 2016 WL 3611543, at *3.

Unlike *Church*, where the plaintiff alleged that she did not receive information she was entitled to receive under the FDCPA, the plaintiffs here only allege that the format and conspicuousness of the disclosures that they signed did not comply with the FCRA. They do not allege that there was any information the FCRA entitled them to receive that they did not receive. Thus, *Church* does not help their cause.

The plaintiffs also cite *Charvat v. Mutual First Fed. Credit Union*, 725, F.3d 819 (8th Cir. 2013), which dealt with an alleged violation of the Electronic Fund Transfer Act (EFTA). The EFTA required ATM operators to provide two forms of notice of any transaction fee being charged, one notice on or at the ATM machine and the other on-screen during the transaction. *Id.* at 822 (*citing* 15 U.S.C. §§ 1693b(d)(3)(B)(i)-(ii)). Because the plaintiff alleged a violation of the notice provisions of the EFTA in connection with his ATM transactions, the court held that he had standing to pursue a claim for damages. *Id.* at 823. But *Charvat* was decided before *Spokeo*, and the Court of Appeals for the Eighth Circuit has since stated that its decision in *Chavrat* has been superseded by *Spokeo. Braitberg v. Charter Communications, Inc.*, No. 14-1737, 2016 WL 4698283, at *4 (8th Cir. Sept. 8, 2016); *see also Jackson v. Abendroth & Russell, P.C.*, No. 4:16-cv-00113, 2016 WL 4942074, at *7 (S.D. Iowa Sept. 12, 2016).

The plaintiffs' reliance on *Thomas v. FTS USA, LLC.*, 13-cv-825, 2016 WL 3653878 (E.D. Va., June 30, 2016), is similarly misplaced. In *Thomas*, the complaint alleged that "Defendants did not provide Plaintiff with a written disclosure…" and "[p]laintiff did

not provide Defendants with his written authorization for them to obtain his consumer report for employment purposes." *Id*. at *8. Where *no* disclosures have been made and *no* authorization has been provided, the plaintiff cannot make an informed decision whether to consent to the "invasion" of his privacy by authorizing that a criminal background report be obtained. But here the plaintiffs' amended complaint does not contend that they were deprived of any information that enabled them to make a knowing and informed decision as to whether to authorize USPS to obtain their criminal background reports.

In a case out of this district, *Groshek v. Time Warner Cable, Inc.*, 15-C-157, 2016 WL 4203506 (E.D. Wis., Aug. 9, 2016), the court rejected the argument that the failure to provide a stand-alone disclosure form, without any additional allegation of harm, establishes a concrete injury for standing purposes. The court concluded, "Because the plaintiff has not alleged a concrete harm resulting from the defendant's alleged violation of the [FCRA], the plaintiff does not have standing, and the court must dismiss the case." *Id*. at *2.

In sum, plaintiffs do not allege that the extraneous information in the disclosure forms which they signed undermined their ability to understand the form or the consequences of authorizing USPS to obtain their criminal background reports. Therefore, plaintiffs have not alleged sufficient facts to provide them with Article III standing to proceed on Count I.

**Tyus's standing on Count II: Pre-Adverse Action Requirement**

Tyus also argues that USPS caused him concrete harm by failing to comply with the FCRA's pre-adverse action notice requirement. Specifically, he alleges that, by telling him that he had five days in which to report any inaccuracies in his criminal background report and then advising him only three days later that his request for a security clearance had been denied, "USPS failed to give [him] a reasonable and real opportunity to dispute the results of the report, and therefore violated the FCRA's pre-adverse action notice requirements." (ECF No. 12, ¶ 43.) He also alleges in the amended complaint that, "[a]s a result of USPS's violations of the FCRA, Plaintiff Tyus has suffered emotional distress, financial loss, and has been deprived of information to which he is entitled under the FCRA." (ECF No. 12, ¶ 44.) While not mentioned in the amended complaint, Tyus's brief opposing USPS's motion to dismiss also contends that there were inaccuracies in his report.

According to USPS, "[t]he purpose of the FCRA's notice requirement is to provide [consumers] an opportunity to contest inaccurate information [in their background reports] and to avoid an adverse decision by a potential employer based on erroneous information." (ECF No. 26 at 10.) The amended complaint, however, does not allege that there was any information in Tyus's background report that was inaccurate. As a result, USPS alleges, he cannot claim that he was harmed by virtue of USPS not

giving him the full five days it said it would give him to address any information in his criminal background report before deciding to deny him security clearance.

*Spokeo* contemplated this very situation:

> A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, *that information regardless may be entirely accurate*. In addition, not all inaccuracies cause harm or present any material risk of harm.

*Spokeo*, 136 S. Ct. at 1550. (Emphasis added.) Tyus has not alleged a concrete harm that is fairly traceable to USPS failing to follow the procedures of the FCRA. And he cannot "amend" his amended complaint by referencing in his brief opposing USPS's motion to dismiss alleged inaccuracies in his background report. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("it is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *see also Smith v. Fifth Third Mortgage Co.*, 15C5820, 2015 WL 6152848, at *2 (N.D. Ill., Oct. 19, 2015).

As for Tyus's allegations of financial and emotional harm, the amended complaint does not allege that, had Tyus been given the full five days that USPS said it would give him, USPS would have reached a different decision regarding granting Tyus security clearance. Because Tyus does not allege that any information contained in his background report was inaccurate, any alleged emotional distress or financial loss is not fairly traceable to the alleged FCRA violation. As one court has stated:

> [T]he procedural injury alleged here is too tenuously connected to a potential substantive injury, because there is no plausible link between the alleged

15
Case 2:15-cv-01467-WED   Filed 10/19/16   Page 15 of 18   Document 33

procedural irregularity and the plaintiff's alleged injury since there is no reason to believe that the outcome would have been substantially different even if the Postal Service had followed the demanded procedures.

*United Trasnp. Union v. Interstate Commerce Comm'n,* 891 F.2d 908, 919 (D.C. Cir. 1989). Absent any allegations in the amended complaint that compliance with the FCRA's pre-adverse action notice requirement would have resulted in the USPS reaching a different conclusion regarding Tyus's request for security clearance, any emotional distress and financial loss suffered by Tyus could not have resulted from USPS's failure to give him the full five days it said it would give him to address any information in his criminal background report.

Because none of the plaintiffs establish that they have standing on either Count I or Count II, the court does not decide whether the amended complaint sufficiently states a claim for relief.

### **Remand or Dismissal**

Plaintiffs point out that USPS invoked this court's jurisdiction after plaintiffs filed this lawsuit in Wisconsin state court. As such, if this court concludes that it does not have subject matter jurisdiction because the plaintiffs lack standing to sue under the FCRA, rather than dismiss this case it should be remanded back to state court pursuant to 28 U.S.C. § 1447(c). (ECF No. 25 at 4-5.)

In response, USPS points out that the amended complaint asserts only federal jurisdiction under a federal statute against a federal agency. Because this court has

16
Case 2:15-cv-01467-WED   Filed 10/19/16   Page 16 of 18   Document 33

original jurisdiction over actions against federal agencies and under the FCRA, removal was proper. And remand under § 1447 is appropriate only if the removal itself was improper. Plaintiffs did not object to removal, have not moved for remand, and are not challenging removal on jurisdictional grounds. (ECF No. 26 at 14.)

The statute at issue here, 28 U.S.C. § 1447(c), states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." "[T]he literal words of §1447(c) … on their face, give … no discretion to dismiss rather than remand an action. The statute declares that, where subject matter jurisdiction is lacking, the removed case *shall* be remanded." *Int'l Primate Prot. League v. Admin's of Tulane Edu. Fund*, 500 U.S. 72, 89 (1991) (emphasis in original). Such procedure is grounded upon the recognition that

> [t]he constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute.

*ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989).

"While some consider it odd that a state court might have the authority to hear a federal [statutory] claim in a setting where a federal court would not, it is clear that Article III's 'case or controversy' limitations apply only to the federal courts." *Smith v. Wisconsin Dep't. of Agriculture, Trade, & Consumer Protection*, 23 F.3d 1134, 1142 (7th Cir. 1994) (*citing ASARCO*, 490 U.S. at 617). Congress chose to empower the state courts to

hear FCRA claims (*see* 15 U.S.C. § 1681p (providing concurrent rather than exclusive jurisdiction for federal courts)) and "Wisconsin's doctrines of standing and ripeness are the business of the Wisconsin courts ... [I]t is not for us to venture how the case would there be resolved." *Smith*, 23 F.3d at 1142.

Therefore, it is appropriate for this court to remand the case to state court for further proceedings. *See Sherman v. Blagojevich*, 08-3177, 2008 WL 4814914 (C.D. Ill. Nov. 4, 2008) ("If [article III] standing is absent, this Court lacks subject matter jurisdiction, and remand is necessary.") (internal quotations omitted); *see also Polo v. Innoventions Int'l, LLC.*, No. 14-55916, 2016 WL 4394586, at *3-5 (9th Cir. Aug. 18, 2016); *Hill v. Vanderbilt Capital Advisors, LLC.*, 702 F.3d 1220, 1225-26 (10th Cir. 2012) (collecting cases).

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss shall be **denied.**

**IT IS FURTHER ORDERED** that the case shall be **remanded** back to the Circuit Court for Milwaukee County for further proceedings.

Dated at Milwaukee, Wisconsin this 19th day of October, 2016.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge