# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONDO TYUS and DAVID GEBHARDT,
Individually and as representatives of the Classes,

Plaintiffs,

v.  Case No. 15-CV-1467

UNITED STATES POSTAL SERVICE,

Defendant.

## ORDER ON PARTIES' MOTIONS FOR RECONSIDERATION

On October 19, 2016, this court found that plaintiffs David Gebhardt and Rondo Tyus lacked Article III standing to proceed in federal court and that the case must be remanded to state court. (ECF No. 33.) The plaintiffs now move the court to reconsider whether they have Article III standing or, alternatively, to allow them to amend their complaint. (ECF No. 37.) USPS has also filed a motion for reconsideration in which it asks this court to reconsider its finding that a remand of the case – instead of a dismissal—was warranted after the court found the plaintiffs lacked Article III standing. (ECF No. 41.) Both motions are fully briefed and ready for resolution.

To prevail on a motion for reconsideration, a party must either present newly discovered evidence or establish that the court made a manifest error of law or fact. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).[1] While "[r]econsideration is a useful mechanism when the court has clearly erred and immediate correction will save time in the long run[,]" *Eivaz v. Edwards*, No. 12-CV-910, 2015 WL 59347, at *1 (E.D. Wis. Jan. 5, 2015), a "'manifest error' is not demonstrated by the disappointment of the losing party." *Oto*, 224 F.3d at 606. Whether to grant or deny a motion for reconsideration is within the district court's sound judgment. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

## I. PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion raises three arguments: (1) the court "overlooked" the plaintiffs' argument that the rights here are "substantive" as opposed to "procedural"; (2) the court misunderstood the facts of *Thomas v. FTS USA, LLC.*, No. 3:13-CV-825, 2016 WL 3653878 (E.D. Va. June 30, 2016); and (3) the court incorrectly interpreted a passage of *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), and should have considered the allegations of factual inaccuracies in Tyus's credit report as set forth in his brief opposing the motion to dismiss.

---

[1] Plaintiffs have not stated whether their motion falls under Fed. R. Civ. Pro. 54(b) or Fed. R. Civ. Pro. 59(e). Nevertheless, as USPS notes: "Motions to reconsider (or more formally, to revise) an order under Rule 54(b) are judged by largely the same standards as motions to amend a judgment under Rule 59(e): 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Wilke v. Shaw*, No. 14-CV-1144, 2016 WL 3167081, at *1 (E.D. Wis. June 6, 2016) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).

**Substantive versus Procedural Rights**

In its order, the court concluded that (1) while the FCRA created a right to privacy, the plaintiffs had not alleged a concrete injury to their privacy right, and (2) the failure to provide a stand-alone disclosure form was the sort of violation which does not establish a concrete injury for standing purposes. (ECF No. 33 at 13; citing *Groshek v. Time Warner Cable, Inc.*, 15-C-157, 2016 WL 4203506 (E.D. Wis. Aug. 9, 2016).) The court did not overlook the distinction between substantive rights and procedural rights. It simply disagreed with the plaintiffs' argument.

The Court of Appeals for the Seventh Circuit recently weighed in on these issues. In *Meyers v. Nicolet Restaurant of De Pere*, LLC, No. 16-2075, 2016 WL 7217581 (7th Cir. Dec. 13, 2016), the plaintiff used a credit card to pay for his dinner at the defendant restaurant. The Fair and Accurate Credit Transaction Act (FACTA) (a 2003 amendment to the FCRA) provides that "[n]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Plaintiff noticed that his credit card receipt did not truncate the expiration date as required. He sued the restaurant. His allegations showed that "Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt." *Id.* at *3.

The Court of Appeals summarized the lessons of *Spokeo*:

> That Congress has passed a statute coupled with a private right of action is a good indicator that whatever harm might flow from a violation of that statute would be particular to the plaintiff. Yet the plaintiff still must allege a concrete injury that resulted from the violation in his case. As *Spokeo* explained, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. In other words, Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 590–91 (7th Cir. 2016) (rejecting the argument that a violation of the Real Estate Settlement Procedures Act, without more, is a sufficient injury-in-fact after *Spokeo*). Such an injury "must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548.

*Meyers*, 2016 WL 7217581, at *3. The court concluded:

> *Spokeo* compels the conclusion that Meyers' allegations are insufficient to satisfy the injury-in-fact requirement for Article III standing. The allegations demonstrate that Meyers did not suffer any harm because of Nicolet's printing of the expiration date on his receipt. Nor has the violation created any appreciable risk of harm. After all, Meyers discovered the violation immediately and nobody else ever saw the non-compliant receipt. In these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that Meyers' identity would be compromised. *See id.* at 1550 ("It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.").

*Id*. In reaching that conclusion, the court noted:

> [Meyers] staked his entire standing argument on the statute's grant of a substantive right to receive a compliant receipt. But whether the right is characterized as "substantive" or "procedural," its violation must be accompanied by an injury-in-fact. A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo*.

*Meyers*, 2016 WL 7217581, at *3, n. 2.

There is admittedly a split among courts as to whether a "bare violation" of the FCRA's disclosure and pre-adverse action notice provisions is in and of itself a "concrete harm" sufficient to give a plaintiff standing to pursue such a claim in federal court. Some courts, including those relied upon by plaintiffs, have concluded that a bare violation is sufficient. *See e.g. Rodriguez v. El Toro Med. Investors Ltd. P'ship,* No. 16-00059, 2016 WL 6804394 (C.D. Cal. Nov. 16, 2016); *Thomas*, 2016 WL 3653878, at *11. Others, including this court, have concluded otherwise. In stating that a "violation of a statute that causes no harm does not trigger a federal case," the Court of Appeals for the Seventh Circuit seems to be in the latter camp. *Meyers*, 2016 WL 7217581, at *3, n.2. Thus, this court's position is unchanged.

**Application of *Thomas***

This court's order noted that in *Thomas* the complaint alleged that Thomas had not received a disclosure form and had not authorized the release of a background report. (ECF No. 33 at 12-13.) Plaintiffs note that, while Thomas *alleged* he never received a disclosure form, he conceded that he had received an "Employment Release Statement" by the time the case was decided at summary judgment. *See Thomas*, 2016 WL 3653878, at *8, n.3. Plaintiffs allege that, therefore, their claims are substantially identical to those in *Thomas*.

As for this court's alleged misunderstanding of the facts in *Thomas*, the reference to the *Thomas* pleadings was merely to contrast them with the plaintiffs' pleadings in

5

this case. In any event, *Thomas* is not binding on this court and as stated above this court disagrees with its conclusion.

**Interpretation of *Spokeo***

Plaintiffs' final argument contends that the court misapplied a passage from *Spokeo* pertaining to the impact of inaccurate background reports. Specifically, plaintiffs take issue with the court's statement that "*Spokeo* contemplated this very situation" (ECF No. 33 at 15), noting that *Spokeo* concerned a different provision of the FCRA than the one at issue here.

The *Spokeo* passage at issue reads:

> A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm.

136 S. Ct. at 1550. Citing this passage from *Spokeo*, this court concluded that, even though USPS failed to provide Tyus with the amount of time it said it would to contest his report, he had not alleged any inaccuracies in the report or identified any harm caused by the failure to provide the stated time. As USPS points out, nothing in *Spokeo* purports to limit the principles espoused to only those claims brought under the section of the FCRA at issue in that case.

Which leaves the plaintiffs to argue that the court erred by not considering alleged inaccuracies in Tyus's report as identified not in their complaint but in their

6
Case 2:15-cv-01467-WED   Filed 01/04/17   Page 6 of 19   Document 56

brief opposing USPS's motion to dismiss. Plaintiffs contend that the inaccuracies are consistent with the allegations in their complaint and should not be considered an "amendment" of the complaint. *See Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001).

The Court does not agree that the allegations in plaintiffs' brief about inaccuracies in Tyus's report were consistent with the allegations in the complaint. The complaint merely alleges that USPS's two notices to Tyus were dated only three days apart and that he was harmed by not receiving a full and fair opportunity to contest his report. The complaint challenged only the failure to provide the allotted five days to respond; it contained no allegations suggesting that the report was inaccurate or challenging USPS's decision denying Tyus a security clearance. The court concluded that plaintiffs' subsequent contention in their brief opposing USPS's motion to dismiss that the report contained inaccuracies was an impermissible attempt to amend the complaint. *See Agnew v. Nat'l Collegiate Athletic Ass'n.*, 683 F.3d 328, 348 (7th Cir. 2012). It does not believe it erred in reaching that conclusion.

**II.     USPS'S MOTION FOR RECONSIDERATION**

USPS argues that, in ordering this case remanded to state court rather than dismissing the complaint once it found that the plaintiffs lack standing, the court erred by failing to take into account that this case was removed pursuant to 28 U.S.C. § 1442(a)(1). USPS contends that § 1442(a)(1) provides a federal forum for the litigants

7

specified therein. Remand is not required because the court never lost its basis for jurisdiction and it would thwart the statute's purpose by forcing USPS to litigate in state court.

In response plaintiffs echo this Court's order (ECF No. 33) and argue that 28 U.S.C. § 1447(c) requires remand. They further contend that "a statute [§ 1442] cannot confer jurisdiction where constitutional jurisdiction is lacking," and that "even though removal may have been *statutorily* permissible, it was not *constitutionally* permissible." (ECF No. 48 at 2, 5.)

In relevant part 28 U.S.C. § 1442(a)(1) provides that:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
   (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof…

The Supreme Court has clarified:

[T]he right of removal under § 1442(a)(1) is made absolute whenever a suit in state court is for any act "under color" of federal office, regardless of whether the suit could originally have been brought in a federal court. Federal jurisdiction rests on a "federal interest in the matter," the very basic interest in the enforcement of federal law through federal officials . . . In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).

8
Case 2:15-cv-01467-WED   Filed 01/04/17   Page 8 of 19   Document 56

*Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (internal citations omitted); *see also Arizona v. Maypenny*, 451 U.S. 232, 242 (1981) (calling this right of removal "absolute").[2]

Thus, the statute under which the case was removed matters. In cases removed under 28 U.S.C. § 1441, a finding that the plaintiffs lack standing means the removal was improper and remand is appropriate. But because § 1442 creates an "absolute right" to proceed in federal court, a finding that the plaintiffs lack standing does not render the removal improper. *See IMFC Prof'l Servs. Of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir. 1982) ("There is no indication in § 1442 that the federal court must have subject matter jurisdiction over the claim against a federal officer. To the contrary, § 1442 itself grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction."); *Maine Ass'n of Interdependent Neighborhoods, v. Comm'r, Maine Dept. of Human Servs.*, 876 F.2d 1051, 1054-55 (1st Cir. 1989) ("[I]f the action is remanded to state court, then [the federal Secretary] clearly has a right to remove the case again, under 28 U.S.C. § 1442(a)(1) . . . His right to remove does not depend upon the federal court's having 'original jurisdiction' over the action as in § 1441(b) but follows from the facts [sic] that he is an 'officer of the United States'"); *Figueroa v. American Bankers Ins. Co. of Florida*, No. 06-cv-00926, 2007 WL 678621, *3 (D. Colo. 2007) ("Removal by a federal

---

[2] These decisions expressly disclaim that federal agencies may invoke removal jurisdiction under 28 U.S.C. § 1442(a)(1). In 1996, however, Congress amended § 1442(a)(1) to include federal agencies amongst those entities who could invoke removal pursuant to § 1442 (*see* Pub.L.No. 104-317, 110 Stat. 3847, § 206(a)(1)(1996)).

9

officer under § 1442(a)(1) is an absolute right, whereas removal under § 1441 is permitted only where 'the plaintiff might have brought [the action] in federal court directly,' an act that is forbidden to a plaintiff who lacks standing to assert a claim in federal court.").

Both the First and Tenth Circuit Courts of Appeal have stated that dismissal, rather than remand, is appropriate where a case removed under § 1442(a)(1) is found to lack subject-matter jurisdiction due to the plaintiff's lack of standing. *Comm'r, Maine Dept. of Human Servs.*, 876 F.2d at 1055 ("As we have said, if the Secretary were to remove the case again under § 1442(a)(1), the district court would have to dismiss the action."); *Greene v. Citigroup, Inc.*, 215 F.3d 1336 (Table), 2000 WL 647190, *2 (10th Cir. 2000) ("[T]he district court had jurisdiction over the case because the case had properly been removed to federal court [under 28 U.S.C. § 1442(a)(1)]. However, [plaintiff] admits, as she has throughout this litigation, that she lacks standing in federal court to bring this action. In such circumstances, dismissal is proper.")

In *Maine Ass'n of Interdependent Neighborhoods v. Petit*, 644 F.Supp. 81, 84 (D. Me. 1986), the court found that plaintiff's lack of standing required dismissal because "[remand] would defeat the strong federal interest underlying the removal statute… and would do so in cases in which the claim is most abstract, that is, where plaintiff has not shown the existence of a constitutionally cognizable 'case or controversy.'" (Citing *Bradford v. Harding*, 284 F.2d 307, 310-11 (2d Cir. 1960) (removal under § 1442 rests on

10
Case 2:15-cv-01467-WED    FILED 01/04/17    Page 10 of 19    Document 56

'far stronger considerations of policy' than general removal, as it vindicates the interests of government itself)).

The court concludes that it did err in ordering remand rather than dismissal. Dismissal rather than remand is the proper disposition here if the court denies the plaintiffs' motion for leave to amend.

### III. MOTION FOR LEAVE TO AMEND

Having decided both motions for reconsideration, the court must now address the plaintiffs' argument that, if the court is unwilling to grant their motion for reconsideration, it should grant them leave to amend their complaint. They submit a proposed second amended complaint with additional allegations. (ECF No. 45-2).

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely granted when justice so requires. "Ordinarily…, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & NW Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (emphasis added). On the other hand, district courts "have broad discretion to deny leave to amend where there is undue

11

delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

"The liberal standard for amending under Rule 15(a)(2) is especially important where the law is uncertain." *Runnion,* 786 F.3d at 520. "[A] plaintiff who receives a Rule 12(b)(6) motion and who has good reason to think the complaint is sufficient may also choose to stand on the complaint and insist on a decision without losing the benefit of the well-established liberal standard for amendment with leave of court under Rule 15(a)(2)." *Id*. at 523.

The plaintiffs argue that justice requires allowing them the opportunity to amend their complaint given that it is early in the case and the law regarding standing post-*Spokeo* is uncertain. They also contend that there has been no undue delay, bad faith or dilatory motive on their part.

USPS argues that the proposed amendment would be futile because the new allegations fail to state a claim properly directed at it. The new allegations in the proposed second amended complaint are directed at alleged inaccuracies in plaintiffs' reports, for which USPS cannot be held liable because it did not prepare the reports. Moreover, the plaintiffs were aware of the alleged inaccuracies when they filed their first amended complaint. Instead of including allegations relating to the inaccuracies in

the amended complaint, the plaintiffs instead chose to test an aggressive legal theory regarding standing.

**Stand-Alone Disclosure Claim**

The court agrees with USPS that the new allegations in the proposed second amended complaint about inaccuracies in the plaintiffs' reports are unrelated to, and do not cure, the problems with the plaintiffs' claim under the stand-alone disclosure provision of the FCRA. The only new allegation relating to the plaintiffs' stand-alone disclosure claim is that, by failing to comply with the stand-alone disclosure requirement, the plaintiffs experienced concrete injuries in the form of the deprivation of information and invasion of privacy. (ECF No. 39-3 at ¶¶ 49 and 64.) But as set forth in this court's previous order, absent an allegation that the plaintiffs did not understand or were confused by the disclosure forms because they were not limited to the information required by the stand-alone disclosure requirement, there is no privacy injury given that both of the plaintiffs gave their consent to criminal background reports being procured. And the second amended complaint, like the amended complaint, contains no such allegation.

As for the alleged informational injury, the proposed second amended complaint (like the amended complaint) still contains no allegation that the plaintiffs were deprived of any information that enabled them to make a knowing and informed decision as to whether to authorize USPS to obtain their criminal background reports.

Characterizing a bare violation of the statute as causing an "informational injury" is insufficient to satisfy the injury-in-fact requirement for Article III standing: "Congress' judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury." *Meyers,* 2016 WL 7217581, *3. Beyond alleging merely a statutory violation, a party must still show some "real-world" harm that is sufficient to satisfy Article III standing. *Id*.

Because the proposed second amended complaint does not set forth a claim under the FCRA's stand-alone disclosure requirement for which the plaintiffs have suffered an injury-in-fact, it would be futile to permit them to amend their complaint with regard to this claim. Thus, the court shall dismiss the stand alone disclosure claims of Gebhardt and Tyus for lack of Article III standing.

**Tyus's Pre-Adverse Action Claim**

Tyus's claim under the pre-adverse action requirement provision of the FCRA is a different matter. The amended complaint contained no allegations of inaccuracies in Tyus's criminal background report. The proposed second amended complaint contains such allegations. In the proposed second amended complaint, Tyus alleges that he has suffered financial loss as a result of USPS's failure to give him the five days it said it would give him to point out inaccuracies in his criminal background report. (ECF No. 39-3 at ¶ 50.)

That is not to say that the court concludes that Tyus will prevail on his pre-adverse action claim. Rather, it is only to say that the proposed second amended complaint alleges that Tyus has suffered an injury-in-fact as a result of USPS's alleged violation of the FCRA's pre-adverse notice requirement. As a result, and mindful of the liberal dictate of Rule 15(a), he will be given leave to amend his complaint to assert such a claim.

### IV. USPS's Motion to Dismiss for Failure to State a Claim

Lastly, the court must resolve an issue presented in USPS's motion to dismiss that the court did not get to given its earlier disposition of the motion. (ECF No. 21.) Specifically, USPS argued that, because Tyus's pre-adverse action claim requires an "employment purpose" (15 U.S.C. § 1681b(b)(3)(A)), and because Tyus was not its employee but rather was an employee of an independent contractor (ABM), USPS's actions were not undertaken for an employment purpose. USPS also contended that Tyus has only offered "generalized, speculative allegations" about USPS's control over the employees of ABM which are insufficient to establish a prospective, common-law employment relationship. Lastly, it argued that no adverse action was taken by USPS against Tyus because "[t]he security clearance denial at issue was a decision regarding 'opportunities to perform services under contract' with the Postal Service, not for employment or any decision for employment purposes." (ECF No. 22 at 21.)

15

Tyus's second amended complaint has not materially changed its allegations about the nature of Tyus's relationship with USPS. It continues to allege that "USPS exerts substantial control over its security contractors, such that USPS was to be Plaintiff Tyus' employer along with ABM." (ECF No. 45-2 at 7, ¶ 26; ECF No. 12 at 6, ¶ 26.) Tyus argues that the term "employment purposes" as used in the FCRA applies to more than simply "employers" and that USPS used his consumer report for the employment purpose of evaluating his fitness to work at USPS. And even if "employment purpose" is to be narrowly construed to only cover "employers," Tyus has sufficiently alleged facts showing that USPS would have exercised sufficient control over ABM employees so as to have been considered a joint employer. As for the lack of an adverse action, Tyus argues that the FTC has interpreted a denial of a security clearance to be an "adverse action" for employment purposes and that the security clearance denial was the reason Tyus was unable to work at USPS.

To survive a Fed. R. Civ. Pro. 12(b)(6) motion a plaintiff must state sufficient factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2010).

In the FCRA "[t]he term 'employment purposes' when used in connection with a consumer report means a report used for the purposes of evaluating a consumer for employment, promotion, reassignment, or retention as an employee." 15 U.S.C. § 1681a(h). In *Lamson v. EMS Energy Mktg. Servs. Inc.*, 868 F.Supp.2d 804 (E.D. Wis. 2012), a court in this district found that the language "as an employee" unambiguously pertained only to evaluations for *employees* under the common-law's definition of that term. Because the plaintiff was an independent contractor, his FCRA claims were dismissed. *Id.* at 818. Tyus cites other courts that conclude that the term "employment purposes" was meant to apply to relationships more broadly than just the typical employer-employee relationship. *See Ernst v. Dish Network, LLC*, 49 F.Supp.3d 377, (S.D.N.Y. 2014); *Advanced Conservation Sys., Inc. v. Long Island Lighting Co.*, 113 F.3d 1229 (Table), 1997 WL 280022, *2 (2d. Cir. 1997); *Hoke v. Retail Credit Corp.*, 521 F.2d 1079, 1081-82 (4th Cir. 1975).

The court does not find it necessary to decide the issue at this time. As Tyus notes, "[d]etermining whether an entity is a joint employer is a fact-intensive inquiry that typically requires further development through discovery… ." *Penteris v. Citgo Petroleum Corp.*, 104 F.Supp.3d 894, 900 (N.D. Ill. 2015). *Lamson* was decided on summary judgment rather than on the pleadings. 868 F.Supp.2d at 809. Tyus has alleged several ways in which USPS was to exercise control over ABM personnel. Accepting these facts as true at this stage, and drawing all reasonable inferences

17
Case 2:15-cv-01467-WED   Filed 01/04/17   Page 17 of 19   Document 56

therefrom in favor of Tyus, the court finds that he has sufficiently plead a prospective joint employer relationship with USPS so as to survive a Rule 12(b)(6) motion to dismiss.

As to USPS's adverse action argument, the FCRA defines "adverse action" as:

(ii) a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee"; or
. . .

    (iv) an action taken or determination that is –
        (I)    made in connection with an application that was made by… , any consumer; and
        (II)   adverse to the interests of the consumer.

15 U.S.C. § 1681a(k)(1)(B)(ii)-(iv). Tyus's second amended complaint alleges that "USPS had denied Plaintiff Tyus' request for a security clearance based on the GIS report, which resulted in Tyus not being eligible for the job as a security guard." (ECF No. 45-2 at 10, ¶ 40.) Thus, Tyus has alleged an adverse action under the statutory definition. Again, at this stage "[t]he issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB*, 649 F.3d at 614. Tyus is so entitled.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for reconsideration (ECF No. 37) is **denied.**

**IT IS FURTHER ORDERED** that the defendant's motion for reconsideration (ECF No. 41) is **granted in part**. The court's October 19 order (ECF No. 33) is hereby vacated with regard to its order for remand.

18
Case 2:15-cv-01467-WED   Filed 01/04/17   Page 18 of 19   Document 56

**IT IS FURTHER ORDERED** that the motion for leave to amend (ECF No. 37) is **granted in part**. Plaintiffs Gebhardt's and Tyus's stand-alone disclosure claims are hereby **dismissed**. Tyus shall file a second amended complaint consistent with this order no later than **January 13, 2017.**

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss for failure to state a claim (ECF No. 21) is **denied.** Defendant shall answer or otherwise respond to the plaintiff's second amended complaint no later than **February 3, 2017.**

Dated at Milwaukee, Wisconsin this 4th day of January, 2017.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge