# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONDO TYUS, Individually and
as a representative of the Class

    Plaintiff,

v.                                                          Case No. 15-CV-1467

UNITED STATES POSTAL SERVICE,

    Defendant.

## ORDER

On December 9, 2015, defendant United States Postal Service (USPS) removed this case to federal court. (ECF No. 1.) All parties consented to the full jurisdiction of a magistrate judge. (ECF Nos. 13, 16.) After USPS moved to dismiss the complaint, the plaintiffs amended the complaint. (ECF No. 12.) The parties subsequently jointly moved to stay the action pending the outcome of *Spokeo v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015). The court granted the motion to stay and found USPS's motion to dismiss moot in light of the amended complaint. (ECF No. 20.)

After the Supreme Court issued its decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), on May 16, 2016, USPS moved to dismiss the amended complaint. (ECF No. 21.)

The court granted the motion to dismiss (ECF No. 33), which order was reconsidered (ECF No. 56) and granted plaintiff Rondo Tyus leave to again amend his complaint under Federal Rule of Civil Procedure 15(a).

Tyus – the only remaining plaintiff— filed a Second Amended Complaint on January 13, 2017. (ECF No. 57.) USPS now moves to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 63.) That motion is fully briefed (ECF Nos. 64, 67, 72) and ready for resolution.

## **Background**

According to the Second Amended Complaint, in September 2014 Tyus applied for security clearance to work at USPS. (ECF No. 57, ¶ 20.) At that time USPS contracted with General Information Services Inc. ("GIS") to perform criminal background checks on job seekers. (ECF No. 57, ¶ 24.) USPS procured Tyus's criminal background report from GIS in October 2014. (ECF No. 57, ¶ 27.) In a letter dated October 27, 2014, USPS provided Tyus with a copy of his criminal background report, telling him that if "you believe the report to be inaccurate or incomplete, please fax the completed disclosure/ dispute form to GIS within five (5) business days from the date of this letter." (ECF No. 57, ¶¶ 27, 31.)

The Second Amended Complaint alleges that Tyus's GIS report contained several inaccuracies. (ECF No. 57, ¶¶ 37-40.) First, the GIS report stated that Tyus had been jailed for a misdemeanor offense in 2011; in fact the jail time was stayed and Tyus

received only a probation and a fine. (ECF No. 57 at ¶ 37.) The GIS report also referenced an ordinance violation from more than seven years before that was labeled as criminal in nature; in fact, the violation was non-criminal and should not have been included in the report. (*Id.* at ¶ 38.) (*See* 15 U.S.C. § 1681c(a)(5), prohibiting the inclusion of non-criminal adverse information older than seven years.) Lastly, the GIS report claimed that Tyus had not admitted to his prior criminal conviction; in fact, Tyus *had* admitted to his conviction in his job application. (*Id.* at ¶ 39.)

In a letter dated October 30, 2014, USPS informed Tyus that, based on the GIS report, it had denied Tyus's request for a security clearance, resulting in Tyus not being eligible for the job as a security guard with USPS. (*Id.* at ¶ 32.) The Second Amended Complaint does not say when Tyus received either letter. Rather, relying on the dates of both letters, it alleges that USPS did not provide Tyus with the five days that the October 27, 2014 letter said he would have to address inaccuracies in his GIS report. The Second Amended Complaint alleges that, "by failing to provide Plaintiff Tyus with those five days, USPS failed to give Plaintiff Tyus a reasonable and real opportunity to dispute the results of the report, and therefore violated the FCRA's pre-adverse action notice requirements." (*Id.* at ¶ 36.) And "[a]s a result of Defendant's FCRA violations, Plaintiff Tyus has suffered emotional distress and financial loss." (*Id.* at ¶ 41.)

USPS moves to dismiss the Second Amended Complaint under both Federal Rule of Civil Procedure 12(b)(1) (for lack of subject matter jurisdiction) and 12(b)(6) (for

3

failure to state a claim upon which relief can be granted). Its arguments under both rules are overlapping, as discussed below, focusing on the alleged deficiency of the allegations in the Second Amended Complaint.

## Analysis

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies[.]'" *Silha v. ACT, Inc.* 807 F.3d 169, 172-73 (7th Cir. 2015) (quoting *Lujan v. Def. of Wildlife,* 504 U.S. 555, 559-60 (1992)). "Standing is an essential component of Article III's case-or-controversy requirement. 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues.'" *Apex Dig., Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009) (internal citation omitted) (quoting *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)).

"The 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560) (internal citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized[.]'" *Id*. (quoting *Lujan*, 504 U.S. at 560). As detailed more fully in previous Orders in this case, a bare procedural violation is not sufficient to give a plaintiff

standing to sue; "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549.

As for the requirement that the injury be "fairly traceable" to the challenged conduct, proximate cause is not necessary. *See Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391, n.6 ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.") However, Tyus still must "show that the defendant's actual action has caused the substantial risk of harm." *Remijas v. Neiman Marcus Grp., LLC.*, 794 F.3d 688, 696 (7th Cir. 2015) (quoting *Clapper v. Amnesty Intern. USA,* 133 S. Ct. 1138, 1150, n.5 (2013)).

USPS argues that the Second Amended Complaint fails to allege a concrete harm because it "does not allege that if the decision letter was dated five days, rather than three days, after the pre-adverse action letter, it would have resulted in a different conclusion regarding his security clearance denial." (ECF No. 64 at 6.) USPS argues that Tyus "only disputes the date on the face of the adverse decision letter." (ECF No. 72 at 11.) Because all it alleges is a bare procedural violation of the Fair Credit Reporting Act (FCRA), the Second Amended Complaint fails to establish that Tyus has standing to pursue his claim.

For the same reasons, USPS contends that Tyus cannot fairly trace his harm to USPS's alleged FCRA violation. Tyus does not causally link his alleged injuries –

5

emotional distress and financial loss— to USPS's failure to give him five rather than three days in which to contest the GIS report. USPS submits a copy of the October 30, 2014 letter (ECF No. 64-1) to show that its decision to deny Tyus's security clearance was "based solely on his conviction for the crime of 'Misdemeanor Violate Domestic Abuse Injunction' (not on sentencing), which Tyus does not contest or allege was inaccurate." (ECF No. 64 at 13.) As a result, the Second Amended Complaint fails to state a claim upon which relief may be granted.

In response Tyus contends that the Second Amended Complaint adequately pleads a concrete injury. He asks the court to draw the reasonable inference that the multiple inaccuracies in the GIS report increased the likelihood that he would be denied a security clearance. (*See* ECF No. 67 at 16-17). Tyus argues that his increased risk of being denied a security clearance (followed by the actual denial) adequately pleads a concrete injury.

With regard to tracing that injury to USPS's alleged violation of the FCRA, Tyus notes the low bar for meeting the "fairly traceable" standard at this stage. *See Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ("[P]articularly at the pleading stage … for purposes of satisfying Article III's causation requirement, we are concerned with something *less than the concept of proximate cause*.") (internal quotations omitted). He states that his financial loss and emotional distress are fairly traceable to USPS's violation because "if USPS had given [Tyus] a meaningful opportunity to dispute and

explain his background check before denying [him] a security clearance, these injuries could have been avoided." (ECF No. 67 at 18.)

The FCRA requires that any person using a consumer report for employment purposes, before taking adverse action based on the report, provide to the consumer a copy of the report and a description in writing of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3). The "clear purpose" of the notice requirement is "to provide individuals an opportunity to contest inaccurate information and to avoid an adverse decision by a potential employer based on erroneous information." *Ramos v. Genesis Healthcare, LLC,* 141 F.Supp.3d 341, 347 (E.D. Pa. 2015); *see also Magallon v. Robert Half Int'l, Inc.,* 311 F.R.D. 625 (D. Or. 2015) ("Congress intended applicants to have a 'real opportunity' to contest an adverse employment decision based on a consumer report …. [T]he applicant must have enough time between the notice and the final decision to meaningfully contest or explain the contents of the report." (citations omitted)).

The Second Amended Complaint alleges that on October 27, 2014, USPS sent Tyus a letter with a copy of his GIS report advising him that, if he believed the report contained inaccuracies, he had five days in which to identify those inaccuracies to GIS. Three days later, on October 30, 2014, USPS sent Tyus a letter (the so-called adverse decision letter) stating that it had denied him a request for a security clearance based on the GIS report. Contrary to what USPS argues, Tyus does not "only dispute[] the date

7

on the face of the adverse decision letter." Rather, the issue raised by the Second Amended Complaint is whether USPS gave Tyus a reasonable opportunity to address the information contained in his GIS report before it made a final decision as to whether to grant Tyus a security clearance. It told him he would have five days in which to do so, but it rendered its final decision before that time was up, as evidenced by the October 30, 2014 letter.

And that was not a mere procedural violation. The Second Amended Complaint alleges a number of inaccuracies in the GIS report which collectively portray Tyus in a negative light. It is fair to infer that those inaccuracies increased the chances that Tyus would be denied a security clearance. Had Tyus been given a reasonable opportunity to address those inaccuracies with GIS and USPS, it might have resulted in a different decision being reached by USPS as to whether to grant Tyus security clearance—or at least that is a reasonable inference from what is alleged in the Second Amended Complaint. (*See, e.g.*, ECF No. 57 at ¶ 41 ("As a result of USPS's violations of the FCRA's pre-adverse action notice requirement, Plaintiff Tyus was … deprived of a meaningful opportunity to dispute and/or explain the results of his report. As a result of Defendant's FCRA violations, Plaintiff Tyus has suffered emotional and financial loss.") *Spokeo* specifically acknowledged that an increased risk of real harm may constitute a concrete injury. *Spokeo*, 136 at 1549 ("This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness.").

While USPS contends that its error did not matter, the court cannot conclude that it is implausible that the inaccuracies in the consumer report may have affected USPS's decision. Indeed, the increased risk of an adverse action because of a faulty consumer report is precisely what the notice requirement of the FCRA is intended to protect against.

USPS also argues that it *did* provide Tyus with a meaningful opportunity to dispute his GIS report. Specifically, it provided Tyus with an opportunity to administratively appeal the decision to deny him a security clearance, an opportunity Tyus took advantage of, albeit ultimately unsuccessfully. (ECF No. 64-2.) Tyus responds that his ability to appeal the decision to deny him security clearance is not a substitute for the FCRA's requirement that he be provided an opportunity to address inaccuracies in the report *before* the decision was made. He argues that it is more difficult to persuade an employer on appeal to reverse a decision it has made than it is to persuade an employer to reach a particular conclusion in the first instance.

USPS cites no authority stating that the availability of an administrative appeals process can (or should) satisfy the FCRA's requirement of notice to the consumer prior to the adverse decision being reached. In any event, at this stage the only question is whether the Second Amended Complaint sufficiently alleges a concrete injury fairly traceable to USPS's failure to comply with the FCRA's notice requirement. As stated

above, it does. The argument raised by USPS is more properly asserted at summary judgment.

USPS also challenges whether the Second Amended Complaint has plausibly alleged a violation of the FCRA because it does not say when Tyus actually *received* the letter dated October 30, 2014. Absent any such allegation, it argues, Tyus cannot show that he was denied an opportunity to discuss his GIS report with USPS. In support of its argument, USPS asks the court to look beyond the pleadings and consider a letter from Tyus to USPS that, it contends, shows that Tyus may not have received the October 30, 2014 letter until well after the five days had passed. (*See* ECF No. 72-3.)

Again, the issue raised by the Second Amended Complaint is whether USPS gave Tyus a reasonable opportunity to point out any inaccuracies in the GIS report before it rendered a final decision on whether to grant him a security clearance. On October 27, 2014 it told him he had five days in which to point any inaccuracies out. But it made its decision to deny him security clearance only three days later, as evidenced by the October 30, 2014 letter. Whether he received the October 30, 2014 letter the next day or a year later does not change the fact (at least as alleged in the Second Amended Complaint) that USPS made its final decision sooner than its October 27, 2014 letter said it would.

At bottom, USPS's motion complains that Tyus has failed to include an allegation to the effect of "but for the inaccuracies in Tyus's GIS report, Tyus would have received

a security clearance." Absent such an allegation, USPS argues, this case is controlled by *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017). In *Gubala* the Court of Appeals for the Seventh Circuit noted that the plaintiff – whose personal information had not been destroyed by the defendant in the ten years after he had canceled his subscription—had not shown (1) that his information was given away or leaked; (2) that the defendant intended to give his information away; or (3) that his information was at risk of being stolen. *Gubala*, 846. F.3d at 910. The plaintiff's "only allegation is that the retention of information, on its own, has somehow violated a privacy right or entailed a financial loss." *Id.*

Tyus, on the other hand, alleges that his GIS report contained inaccuracies. (ECF No. 57 at ¶¶ 37-40.) He alleges that USPS told him it would give him five days to point out any inaccuracies in the GIS report and then reached its final decision, denying him security clearance, after only three days. (*Id.* at ¶ 36.) And he alleges financial harm and emotional distress as a result. (*Id.* at ¶ 41) While USPS may challenge the veracity of any and all of those statements in a later proceeding, the Second Amended Complaint connects the FCRA violation (the failure to provide Tyus with a reasonable opportunity to point out inaccuracies in his GIS report) to a concrete injury (the increased risk of security clearance denial). Thus, the Second Amended Complaint alleges more than the complaint in *Gubala* and plausibly states a concrete injury that is fairly traceable to USPS's conduct.

## Conclusion

In sum, the court concludes that Tyus has alleged a plausible claim that he suffered an injury in fact that is fairly traceable to the defendant's alleged violation of the FCRA. Whether the defendant may be able to show that Tyus did not actually sustain any injury because, for example, the defendant would have declined to hire Tyus even if the report had been correct, is a factual dispute that is not properly before the court on a motion to dismiss.

**IT IS THEREFORE ORDERED** that USPS's motion to dismiss is **denied.**

Dated at Milwaukee, Wisconsin this 20th day of June, 2017.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge